**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:10-CR-2575** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALG DIRECT, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

This is an action for breach of contract filed by Clark Distribution Systems, Inc. ("CDS") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that ALG, a logistics provider and distributer of printed materials, breached a contract entered into on June 28, 2010, for "transportation and related services" to be provided by CDS to ALG. Presently before the court is the motion (Doc. 41) to dismiss filed by ALG. For the reasons that follow, the court will deny the motion.

**I.    Background**

Plaintiff CDS is a Delaware corporation with its principal place of business in New Jersey and a "major hub of operations" in Mechanicsburg, Pennsylvania. (Doc. 33 ¶ 1). CDS is a "provider of distribution logistics services to the publishing and printing industries–also known as a 'freight forwarder'". (Id. ¶ 6). CDS's business consists of picking up materials such as newspapers and magazines from a distributor and forwarding these materials to delivery services such as the United

States Postal Service ("USPS").  (Id. ¶¶ 7, 8).  When delivering materials to the

USPS, CDS must comply with the USPS's standards and regulations.  (Id. ¶ 9).  In

particular, materials must be sorted and accompanied by easily accessible bar

codes.  (Id. ¶¶ 19, 22).

Defendant ALG is an Illinois corporation with its principal place of business

in Illinois.  (Id. ¶ 2).  ALG is a "logistics provider in the business of coordinating the

distribution of printed materials."  (Id. ¶ 10).  CDS had performed work for ALG for

many years before 2010 without issue, and the two companies maintained a good

working relationship.  (Id. ¶ 13).  On June 28, 2010, ALG and CDS entered into a

contract, referred to as the Transportation Services Agreement ("TSA"), wherein

CDS agreed to "furnish transportation and related services as directed by ALG for

the transportation of printed matter and materials, equipment and supplies for

distribution to USPS Locations and other locations for ALG as may be tendered to

[CDS] from time to time."  (Id. ¶ 12; Doc. 33, Ex. A, Art. 1).  Under the TSA, CDS

was to invoice ALG within 10 days of service, and ALG would then have 40 days to

remit payment for the service.  (Doc. 33, Ex. A, Art. 6).

Patrick Del Monico III ("Del Monico"), then-president of ALG, represented to

CDS that the volume of shipments ALG would provide to CDS under the TSA

would be approximately 11% greater than the volume ALG provided CDS prior to

the contract's formation.  (Id. ¶¶ 11, 14).  Del Monico also represented that all

materials would be delivered to CDS in acceptable condition consistent with the

condition of materials tendered to CDS before the TSA.  (Id. ¶ 15).  CDS relied on

Del Monico's statements as it prepared to perform under the TSA.  (Id. ¶ 16).

According to the amended complaint, much of the material tendered by ALG

to CDS was in unacceptable condition, despite ALG's "awareness of their

obligations."  (Id. ¶¶ 20, 21).  Many of the pallets tendered by ALG were

disorganized, and bar codes required by the USPS were obscured or missing.  (Id. ¶

22).  Additionally, the amount of product provided by ALG to CDS was over 100%

greater than before the TSA became active, rather than the 11% previously

suggested by Del Monico.  (Id. ¶ 24).

Ultimately, CDS claims that ALG owes $681,474.13 in unpaid shipment

invoices and an additional $337,997.00 for CDS's processing the higher-than-

anticipated volume of materials and converting it to a condition acceptable to the

USPS.  (Id. ¶¶ 25, 27, 31, 32).

On August 19, 2011, ALG filed the instant motion (Doc. 41) to dismiss.  ALG

contends that the $337,997 CDS claims in damages for processing higher than

anticipated volumes and converting materials to an acceptable condition is

incidental or consequential to ALG's purported breach of contract, and is

unrecoverable under Article Fourteen of the TSA.  (Doc. 42 at 4; Doc. 33, Ex. A, Art.

14(d)).  ALG does not dispute CDS's claim that the $681,474.13 in unpaid invoices

falls under the category of direct damages.  (Doc. 42).  However, ALG has expressed

its inability to pay that sum to CDS, citing "cash-flow issues."  (Doc. 33 ¶ 28).  The

only issue presently before the court is whether the $337,997 qualifies as direct

damages, which can be recovered, or as incidental/consequential damages, recovery of which is barred under Article Fourteen of the TSA.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2009)); see also Kanter v. Barella, 489 F.3d 170, 177 3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Philips, 515 F.3d at 232 (quoting Bell Atl. Corp v. Twombley, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629

4

F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).  Next the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id., see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. at 662 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial probability when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When the complaint fails to present a *prima facie* case of liability, however, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

**III.**   **Discussion**

Defendant ALG contends that CDS fails to state a claim upon which relief can be granted for the $337,997 CDS claims it is owed by ALG.  This contention is based on ALG's assertions that the $337,997 for processing higher volumes of material and converting the material to acceptable condition constitutes

"incidental, indirect, special or consequential" (hereafter "indirect") damages, and that both parties are barred from claiming indirect damages under the TSA.

Article Fourteen, section (d) of the TSA reads, in relevant part, "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND." (Doc. 33, Ex. A, Art. 14(d)). Under Pennsylvania law, such provisions are generally enforceable unless they are unconscionable. Factory Market, Inc. v. Schuller Intern., Inc., 987 F. Supp. 387, 399-400 (E.D. Pa. 1997). In the present case, neither party suggests that the provision is unconscionable, and therefore this court will assume that this provision is enforceable.

The question of whether a particular component of damages is direct or indirect is generally a question of fact to be decided at trial. Combustion Sys. Servs., Inc. v. Schuylkill Energy Res., Inc., No. Civ. A. 92-4228, 1993 WL 496946 at *2 (E.D. Pa. Nov. 19, 1993). Both CDS and ALG agree that there are exceptions to this rule, particularly when the parties define or agree upon what constitutes indirect damages or the court has sufficient information in the record to determine as a matter of law whether damages are direct or indirect. See id. ALG avers that "the demarcation between the direct damages under the [TSA] . . . and the indirect . . . damages is clear cut," with the $337,997 clearly falling on the indirect side of the demarcation. (Doc. 45, at 3). CDS maintains that the classification of the $337,997 is an issue of fact properly reserved for trial. (Doc. 44, at 2).

6

To succeed at this stage of proceedings, ALG must demonstrate that CDS has admitted that the damages are indirect, that the damages at issue are clearly defined as indirect by the TSA or some other authority, or that there is enough information available for the court to determine that the damages are indirect as a matter of law.  Combustion Sys. Servs. Inc., 1993 WL 496946, at *2.

## A.    Admission or Definition by CDS

ALG contends that CDS took a position inconsistent with its current claim in a prior case between the two parties (ALG Direct, Inc. v. The Clark Group, Inc., No. 1:11-CV-1356 (M.D. Pa. 2011)), and is thus barred from asserting its current argument by the doctrine of judicial estoppel.  ALG also avers that CDS admitted in their Amended Complaint (Doc. 33) that the $337,997 constitutes indirect damages.  The court will address these arguments in turn.

### 1.    Judicial Estoppel

ALG suggests that CDS is "perilously close to running afoul of the doctrine of judicial estoppel" in its assertion that the damages at issue are direct.  The doctrine of judicial estoppel "seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding."  Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).  Under the three-pronged test given by the Third Circuit in Montrose Medical Group Participating Savings Plan v. Bulger, a district court may invoke judicial estoppel "only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding;

7

(2) the party changed his or her position in bad faith, i.e., in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity." 243 F.3d 773, 777-78 (3d Cir. 2001).

CDS's claim is not judicially estopped. First, as CDS notes, the prior position referred to by ALG was that of The Clark Group, Inc., the parent company of CDS. (ALG Direct, Inc., No. 1:11-CV-1356). Assuming, *arguendo*, that judicial estoppel may bar a subsidiary from contradicting a statement its parent company made in a prior proceeding, there is no indication that the court ever accepted The Clark Group's legal argument. In the absence of evidence of "a threat to judicial integrity other than [a party's] inconsistent positions. . . judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accepts its earlier position." G-I Holdings, Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009). ALG voluntarily dismissed the complaint before a ruling was made on The Clark Group's motion to dismiss. (See No. 1:11-CV-1356, Docs. 32, 41).

Moreover, The Clark Group's arguments in ALG Direct, Inc. related to ALG's claims that The Clark Group breached a "strategic alliance" that arose from multiple documents, including the TSA. (Id. Doc. 25). The Clark Group claimed that the breach alleged by ALG was not governed by the TSA or any other named document, and at no point discussed the distinction between direct and indirect damages under the TSA. The Clark Group did state that its failure to "expend the necessary time and resources needed to process Type 3 commodities" did not

8

constitute a breach under any documents between the Group and ALG, but this statement was based on multiple theories different from the one presently at issue. (Id. Doc. 32).  Hence, CDS's claim in the present case is not "irreconcilably inconsistent" with the arguments of The Clark Group in ALG Direct, Inc.

## 2.   CDS's Amended Complaint

ALG next claims that CDS, by separating its claim for $681,474.13 in unpaid invoices from its claim of $337,997 related to the volume and condition of goods tendered, is conceding that the latter of these two claims does not stem directly from the alleged breach of contract.  (Doc. 42, at 5).

CDS distinguishes these two claims, but CDS does not identify the $337,997 as indirect damages.  It is possible that multiple claims of damage could be found to be direct, especially given that CDS suggests that ALG may have breached the TSA in multiple ways.  (Doc. 33 ¶ 31); see Seidel, Gonda, and Goldhammer, P.C. v. Master Data Center, Inc., 438 F. Supp. 80, 82 (E.D. Pa. 1977).  There is no evidence that CDS, by listing the claimed amounts separately, intended to distinguish the damages for purposes of Article Fourteen of the TSA.

## B.   Definition of Indirect Damages Under the TSA and in General

Article Fourteen states "NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO ANY LOSS OF USE, LOSS OF BUSINESS OR LOSS OF PROFITS."  (Doc. 33, Ex. A, Art. 14(d)). The $337,997 does not fall under any of the categories listed, as CDS does not claim

9

that the $337,997 represents money it might have received but for ALG's conduct. The TSA does not explicitly define "amounts incurred in expending the time and labor required to convert the commodity tendered to [CDS] into a usable condition" or "amounts incurred in processing the unanticipated and wrongfully inflated volume of commodity tendered to [CDS]" as indirect damages, therefore external sources will help characterize the present claim for damages. (<u>See</u> Doc. 33 ¶¶ 31, 32).

The Restatement (Second) of Contracts § 347 distinguishes "the loss in value to [the injured party] of the other party's performance caused by its failure or deficiency"—direct damages—from "any other loss, including incidental or consequential loss, caused by the breach,"—indirect damages. RESTATEMENT (SECOND) OF CONTRACTS § 347 (1981). The Pennsylvania Uniform Commercial Code ("PA UCC"), while not directly controlling in the context of a contract for services rather than goods, is also instructive.[1] Under the PA UCC, incidental damages are defined as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the breach by the buyer, in connection with return or resale of the goods or otherwise resulting from the breach." 13 PA. CONS. STAT. § 2710. ALG analogizes this to the present case, suggesting that CDS "seeks reimbursement for additional 'time and labor' and 'processing' – i.e., expenses it incurred relating to the care,

---

[1] Indeed, both parties cited the PA UCC in their respective briefs on ALG's motion to dismiss.

custody and control of the commodities sent by ALG's customers."  (Doc. 42, at 7).

In Atlantic Paper Box Co. v. Whitman's Chocolates, the Eastern District of

Pennsylvania defined incidental damages as those "normally incurred when a

buyer (or seller) repudiates the contracts or wrongly rejects the goods, causing the

other to incur such expenses as transporting, storing, or reselling the goods," and

consequential damages as those that "do not arise within the scope of the buyer-

seller transaction, but rather stem from losses incurred by the non-breaching party

in its dealings, often with third parties, which were a proximate result of the

breach."  Atlantic Paper Box Co. v. Whitman's Chocolates, 844 F. Supp. 1038, 1046

(E.D. Pa. 1994).

The present dispute is over whether the $337,997 is properly classified as

"loss in value to CDS of ALG's performance under the TSA caused by ALG's failure

or deficiency" or "any other loss. . . caused by ALG's breach of the TSA."  At this

stage, there are issues of fact which must be resolved before CDS's claim for

damages is classified as direct or indirect.

ALG maintains that "[t]he only 'payment' provision of the TSA relates to

payments for shipments made pursuant to. . . the TSA.  Accordingly, [CDS's] direct

damages under the TSA . . . consist of any failure on the part of ALG to pay for

shipments made by [CDS] pursuant to the TSA."  (Doc. 42, at 5).  In its amended

complaint, however, CDS avers that ALG's conduct – specifically, tendering a much

higher volume of materials than originally understood and in a condition much

worse than anticipated – constituted a breach of the TSA, in addition to any failure

by ALG to pay invoices.  (Doc. 33 ¶¶ 31, 32).  The TSA contains an "integration

clause" (Doc. 33, Ex. A, Art. 22) which states that the entire agreement between

CDS and ALG is contained within the TSA, thus barring CDS from using Del

Monico's representations to contest terms of the TSA.  CDS avers, however, that

ALG understood the TSA to contain an obligation to tender goods in acceptable

volume and condition.  (Doc. 33 ¶ 20).  Ultimately, whether ALG's conduct

constituted a breach of the TSA is a mixed question of law and fact.  If ALG's

conduct was, in fact, a breach of the TSA, then the question of how CDS's damages

flowed from that breach (i.e. directly or indirectly) is a matter of fact that is not

properly addressed at this stage.

ALG, in its reply brief (Doc. 45), states that "[i]f the commodities [tendered to

CDS] were not in 'good order and condition,' [CDS's] remedy was to *reject the*

*shipment;* not to falsely represent (through the receipt [referenced in Article 5(a) of

the TSA]) that the commodities were in 'good order and condition,' [and] expend

additional money putting the commodities in good order and condition. . ." (Doc. 45,

at 6) (emphasis in original).  At the present stage, however, there is no information

concerning whether and under what circumstances CDS signed these receipts or

"falsely represented" the condition of the commodities.  Discovery may produce the

answers to these questions, but at the motion to dismiss stage, the court may look

only to the complaint and documents attached to the complaint as well as matters

of public record.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380,

1384 n.2 (3d Cir. 1994).  Based on the information available at the current stage of

proceedings, and viewing the amended complaint in the light most favorable to plaintiff CDS, the court concludes that its claim for $337,997 in damages is not clearly barred under the TSA.  Therefore, ALG's motion to dismiss is denied.

**IV.**   **Conclusion**

For the foregoing reasons, the motion to dismiss is DENIED.  An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       August 27, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:10-CR-2575** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ALG DIRECT, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 27th day of August, 2012, upon consideration of the motion (Doc. 41) to dismiss filed by defendant ALG Direct, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion to dismiss (Doc. 41) is DENIED.

   <u>S/ Christopher C. Conner</u>
CHRISTOPHER C. CONNER
United States District Judge