## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:10-CR-2575** |
| **Plaintiff** | : | **(consolidated)** |
| | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ALG DIRECT, INC.,** | : | |
| **Defendant** | : | |

==========================================

| | |
|---|---|
| **THE CLARK GROUP, INC.,** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **ALG DIRECT, INC.,** | : |
| **Defendant/Third Party Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : |
| **Third-Party Defendant** | : |

## <u>MEMORANDUM</u>

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement. Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties. Presently before the court are plaintiffs' omnibus motion (Doc. 65) for summary judgment and the magistrate judge's report (Doc. 99) recommending that it be granted in part and

denied in part.  ALG filed objections (Doc. 100) to the magistrate judge's report and

recommendation ("R&R"), and the parties fully briefed the issues raised by ALG's

objections.  (See Docs. 101, 102, 105, 108).  For the reasons set forth below, the court

will adopt the R&R in part and reject it in part.

## I.   __Factual Background__[1]

Clark is the parent company of CDS, a logistics and transportation company

that provides freight forwarder services.  (Doc. 67 ¶¶ 1, 5; Doc. 71 ¶¶ 1, 5).  ALG is a

logistics company that often works with freight forwarders such as CDS to arrange

for the distribution of its clients' freight.  (Doc. 67 ¶ 2, 71 ¶ 2).

On June 28, 2010, CDS and ALG entered into a Transportation Services

Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for

ALG.  (Doc. 67 ¶ 4, 71 ¶ 4).  During this same time period, ALG agreed to sublease

one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site.").

(Doc. 67 ¶ 7, 71 ¶ 7).  ALG sought a Pennsylvania facility in which Clark would

handle freight forwarding work pursuant to the TSA, while ALG handled separate

co-mail and co-palletization operations *after* installing its own equipment.[2]  (Doc. 67

---

[1]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to ALG, the
nonmoving party.  See infra Part III.  Except as noted, the court's discussion of the
factual background derives from the Magistrate Judge's report (Doc. 99), familiarity
with which is presumed.

[2]  In its objections, ALG emphasizes that no co-mail or co-palletization
equipment was ever installed at the Harrisburg facility and that the only activity
that occurred at the Harrisburg Site was Clark's handling of ALG's freight pursuant
to the TSA.  (Doc. 100 at 3-4, 71 ¶ 62, 76 ¶ 62).

¶ 10, 71 ¶ 10, 68-2 at 3).  A Letter of Intent, executed before the sublease agreement, further delineates the parties' plans.  (Doc. 67-4, 71 ¶¶ 58-61, 76 ¶¶ 58-61).  Somewhat inexplicably, the sublease contains an integration clause and does not reference either the TSA or the Letter of Intent.  (Doc. 67 ¶¶ 11-12, 67-1, 71 ¶¶ 11-12).

In October 2010, ALG's clients began submitting freight to the Harrisburg Site for freight forwarding services.  (Docs. 67 ¶ 30, 71 ¶ 30).  Immediately thereafter, a conflict arose between the parties concerning CDS's handling of the freight of one of ALG's clients, Vertis Incorporated ("Vertis"). (Docs. 67 ¶¶ 14-35, 71 ¶¶ 14-35).  As a result, in November 2010, ALG diverted all freight away from the Harrisburg Site while ALG employees attempted to organize the freight that was already there. (Docs. 71 ¶ 82, 76 ¶ 82).

Around Thanksgiving 2010, ALG staged a number of loads for CDS to deliver to CDS's competitor, Nationwide, for ultimate delivery to USPS.  (Docs. 71 ¶ 83, 76 ¶ 83).  ALG alleges that CDS failed to deliver this freight as staged; instead, the freight was loaded in a largely disorganized manner and sent to Nationwide.  (Docs. 71 ¶ 84, 76 ¶ 84).  ALG stopped paying invoices to CDS under the TSA in November 2010.  (Doc. 67 ¶ 41; Doc. 71 ¶ 41).  ALG also made its last rent payment under the Sublease in November 2010, which reflected a pre-payment of rent for the month of

December.[3]  (See Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67-1; compare Doc. 68-9 at 13-14

with Doc. 68-9 at 15-17).  On December 17, 2010, legal counsel for Clark and CDS

sent a letter to ALG demanding that ALG "immediately cease shipping of any

additional [c]ommodities and make arrangements to collect all [c]ommodities

located at CDS facilities."  (Doc. 71 ¶ 85; Doc. 76 ¶ 85).

## II.    **Procedural History**

CDS filed the instant action against ALG and its then-president, Patrick Del

Monico[4] on December 17, 2010, asserting breach of contract and anticipatory

repudiation against ALG.  (Doc. 1 at 5-6).   On July 29, 2011, the court granted

ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend.

(Doc. 32).  CDS filed a proper amended complaint that same day, which alleges only

breach of contract against ALG under the terms of the parties' transportation

services agreement ("the TSA case").  (Doc. 33 ¶¶ 30-32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA

case with Clark Group, Inc. v. ALG Direct, Inc. (Civ. A. No. 1:11-CV-1299) ("the

---

[3] ALG objects to the Magistrate Judge's conclusion that ALG withheld rental payments *before* Clark sent ALG the December 17, 2010 letter demanding that ALG "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." (See Docs. 71 ¶ 85, 76 ¶ 85, 99 at 18, 100 at 4-5).  ALG explains that the Magistrate Judge inappropriately relied on the parties' statements of fact, which state that ALG ceased rent payments in November.  (Doc. 100 at 4).  Significantly, ALG did not attempt to clarify this fact by citing to record evidence until *after* the issuance of the R&R.

[4] Clark initially alleged negligent misrepresentation against Del Monico.  On April 20, 2011 Clark filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant.  (Doc. 21).

Sublease case").  In the Sublease case, Clark alleges that ALG breached the terms

of the sublease executed between the parties.  (Civ. A. No. 1:11-CV-1299, Doc. 1).

After answering the complaint, ALG filed a third-party complaint against CDS.

(Civ. A. No. 1:11-1299, Doc. 9).  In the third-party complaint, ALG claims that CDS

tortiously interfered with the sublease through its alleged abandonment of the TSA

and that CDS and Clark conspired to cause ALG to default on the sublease.  (Id.)

On November 14, 2011, CDS filed its answer to ALG's third-party complaint.  (Civ.

A. No. 1:11-1299, Doc. 12).

 After consolidation, ALG answered CDS's amended complaint from the TSA

case.  (Doc. 57).  In its answer, ALG asserted several counterclaims against CDS for

damages allegedly caused by CDS's mishandling of freight.  (Id.)

 CDS and Clark filed the instant omnibus motion (Doc. 65) for summary

judgment on April 15, 2013.  With respect to the TSA case, CDS alleges that the

court should grant it partial summary judgment on ALG's counterclaims seeking an

indemnification obligation for future damages incurred against Vertis.  (Doc. 65 at

4, 66 at 20-24).  However, while the motion was pending, ALG filed an amended

counterclaim removing this claim (Doc. 93).[5]  Clark also asserts that summary

judgment in its favor is warranted in the Sublease case because ALG breached the

sublease by withholding payment.  (Doc. 66 at 7-9).  ALG does not contest that it

_____

 [5] CDS filed a partial motion (Doc. 94) to dismiss ALG's amended
counterclaim on August 20, 2013.  The court referred this motion to Magistrate
Judge Susan E. Schwab (Doc. 96), who will address this motion in a separate report
and recommendation.

withheld payment, but instead asserts that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

ALG responds by emphasizing the Letter of Intent and the plain language of the TSA. According to ALG, the parties intended for CDS to handle and prepare ALG's clients' commodities for delivery. ALG argues that CDS's failure to complete this task constructively evicted ALG because it constituted an overt restriction on the use of the subleased premises, limiting the premises' utility, and forcing ALG to remove its commodities from the site. (Doc. 72 at 8-11). ALG also contends that it was actually evicted from the Harrisburg Site when Clark's counsel sent the December 17, 2010 letter, demanding that ALG "cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities." (Id. at 11).

Clark avers that there is no factual or legal support for ALG's defenses. Clark contends that the sublease between the parties was fully integrated and that the court cannot look to the letter of intent or the TSA to demonstrate the parties' intent under the sublease. (Doc. 75 at 4-5). Clark alleges that its conduct does not rise to the level of interference with actual possession necessary to constitute a breach of the covenant of quiet enjoyment. (Id. at 5-9). As a factual matter, Clark asserts that the sublease was not limited to ALG's operations under the TSA, but also contemplated ALG implementing co-mail and co-palletization operations at the site. (Id. at 9-11). Clark further contends that its actions did not force ALG to

6

remove its commodities from the site, and that ALG took this action unilaterally. (Id. at 11-12).

The instant motion was referred to Magistrate Judge Susan E. Schwab, who filed an R&R on December 3, 2013. (Doc. 99). The Magistrate Judge recommends that the court deny CDS's motion for partial summary judgment as moot in light of ALG's amended counterclaim. The Magistrate Judge further recommends that the court grant Clark's motion for summary judgment as it relates to the Sublease case. The Magistrate Judge finds that the parties do not dispute ALG's withholding of rent payments and concludes that the record evidence does not support ALG's defenses of constructive or actual eviction.

The Magistrate Judge finds that ALG was not constructively evicted because the sublease contemplated other uses for the Harrisburg Site besides CDS's handling of ALG's clients' commodities. (Id. at 17-18). Specifically, the sublease indicates that ALG's intended use of the Harrisburg Site was for "general warehouse purposes" and other "common and usual purposes pertaining to [its] business." (Doc. 67-1 at 5). The Magistrate Judge determines that the sublease was fully integrated and that its terms were unambiguous. (Doc. 99 at 15-16). Thus, the Magistrate Judge concludes that it is precluded from considering extrinsic evidence, such as the Letter of Intent or the TSA, in its analysis of the sublease's purpose. (Id.) Based on the sublease's terms, the Magistrate Judge reasons that "ALG still maintained the right and privilege under the sublease to enter and use the Harrisburg site for business purposes." (Doc. 99 at 18). The Magistrate Judge

7

further notes that there was no evidence that ALG was blocked from the Harrisburg Site or that the Harrisburg Site was changed in some fundamental way as to render it unsuitable for ALG's business purposes.  (Id. at 18).

The Magistrate Judge also concludes that a jury could not reasonably determine that Clark actually evicted ALG.  The Judge reasons that "ALG's decision to withhold rental payments occurred before Clark sent ALG the letter demanding that ALG 'cease shipping of any additional [c]ommodities and make arrangements to collect all [c]ommodities located at CDS facilities.'" (Doc. 99 at 18).  Thus, the Magistrate Judge opines that ALG's defenses are meritless and that the court should grant summary judgment to Clark on its breach of contract claim.

ALG filed objections (Doc. 100) to the Magistrate Judge's recommendation that the court should grant Clark's motion for summary judgment as it relates to the Sublease case.  Generally, ALG asserts that questions of material fact and law remain concerning its defenses that preclude summary judgment.  ALG also asserts that the Magistrate Judge's finding that ALG's third-party complaint against CDS for liability on the sublease survives summary judgment is contradictory to the Magistrate Judge's recommendation to grant Clark's motion for summary judgment in the Sublease case.  Neither party objected to the Magistrate Judge's recommendation to deny CDS's motion for partial summary judgment as moot in the TSA case.  ALG's objections are fully briefed and ripe for disposition.

III.   **Legal Standard**

    A.   **Legal Standard for a Motion for Summary Judgment**

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

    B.   **Standard of Review for a Magistrate Judge's Recommendation**

When parties file objections to a magistrate judge's report and recommendation, the court must perform a *de novo* review of the contested portions of the report.  Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c).  Local Rule 72.3 requires "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  The court will review the uncontested portions of the Magistrate Judge's report for "clear error on

the face of the record." See Cruz v. Chater, 990 F. Supp. 375, 375-78 (M.D. Pa. 1998) (quoting FED. R. CIV. P. 72(b) advisory committee's note (1983)).

## III. Discussion

The court will first review the Magistrate Judge's recommendation that the court deny CDS's motion for summary judgment in the TSA case as moot in light of ALG's amended counterclaim. The court will subsequently examine whether a jury could reasonably find that Clark actually or constructively evicted ALG from the Harrisburg Site, which would preclude Clark's recovery of damages for ALG's alleged breach of the sublease. Finally, the court will address the Magistrate Judge's determination that ALG's third-party complaint against CDS in the Sublease case survives despite her recommendation to grant summary judgment in favor of Clark.

### A. Moot Issue

CDS asserts that partial summary judgment should be granted on ALG's counterclaims in the TSA case for damages associated with claims brought against ALG by Vertis. While the instant motion was pending, ALG filed an amended counterclaim that removed the claim for Vertis damages. (Doc. 93). The Magistrate Judge thus recommended that the court deny CDS's partial motion for summary judgment as moot. The parties do not object to the Magistrate Judge's recommendation on this ground, (see Doc. 100 at 2 n.2, 101 at 15 n.9) and the court does not find it to be clearly erroneous. Thus, the court will deny CDS's motion for partial summary judgment as moot.

### B.   ALG's Affirmative Defenses

ALG does not contest that it withheld payments contrary to the sublease's terms.  Instead, ALG asserts that it is not liable because Clark breached ALG's implied covenant of quiet enjoyment.[6]  The covenant of quiet enjoyment provides that a lessor must permit a tenant the full enjoyment of its leasehold subject to any rights reserved to the lessor.  <u>Checker Oil Co. v. Delaware, Inc. v. Harold H. Hogg,</u>

---

[6] The sublease contains a provision concerning ALG's right to remedy any defaults following written notice:

> In the event [Clark] defaults in keeping, observing or performing any of the terms, provisions, covenants and conditions contained in the Lease or this Sublease, and such default is not cured (or proper corrective measures to cure such default commenced) by [Clark] within the periods specified for the curing of such defaults, [ALG] shall have the right to remedy such default after it gives written notice thereof."

(Doc. 67-1 ¶ 8).  Clark cites this provision in its discussion of ALG's alleged breach of the agreement.  Specifically, Clark states that ALG breached the sublease by failing to provide written notice of default under the Sublease and by withholding rent payments.  (Docs. 65 at 3, 66 at 15-16, 75 at 13-14).  Subsequent to the issuance of the R&R, Clark now asserts that ALG's failure to provide written notice constitutes a waiver of the defenses of constructive and actual eviction.  (Doc. 101 at 8).  Clark's untimely assertion of this substantive argument is fatal to its consideration.  <u>See, e.g.</u>, <u>Maurice v. State Farm Mut. Auto. Ins. Co.</u>, 235 F.3d 7, 10 (1st Cir. 2000) ("[t]he law is clear that when a dispositive motion is heard before a magistrate judge, the movant must make all her arguments then and there, and cannot later add new arguments at subsequent stages of the proceeding."); <u>Thompson v. Sirmons</u>, 617 F. Supp. 2d 1129, 1134 (W.D. Okla. 2008) ("Claims, issues or theories raised for the first time in objections to a Magistrate Judge's report and recommendation are deemed waived); <u>Thomas v. Chater</u>, Civ. A. No. 95-3194, 1997 WL 256458, at *7 n.10 (E.D. Pa. May 9, 1997) ("Issues raised for the first time in objections to a magistrate's recommendations are deemed waived.").  Moreover, Clark does not provide any legal authority for this waiver argument.  Thus, the court declines to address it further.

Inc., 380 A.2d 815, 818 (Pa. Super. Ct. 1977).   Under Pennsylvania law, the covenant

of quiet enjoyment is implied when not expressly provided for in a lease.  Kohl v.

PNC Bank Nat'l Ass'n, 912 A.2d 237, 248 (Pa. 2006).  Any wrongful act by the lessor

that interferes with the lessee's possession, in whole or in part, breaches the

covenant of quiet enjoyment and constitutes a termination of the lease agreement.

Id. at 248-49 (quoting Kelly v. Miller, 94 A. 1055, 1056 (1915)).  Hence, the breach of a

covenant of quiet enjoyment may occur through constructive or actual eviction.  Id.

In the case *sub judice*, ALG alleges that Clark breached ALG's implied covenant of

quiet enjoyment through both constructive and actual eviction of ALG from the

Harrisburg Site.  The court will address each theory in turn.

> 1.   *Constructive Eviction*

Constructive eviction is sufficient to breach the covenant of quiet enjoyment

when the lessor's acts substantially decrease the utility of the premises.  Kohl, 912

A.2d at 249.  In other words, a breach of the covenant of quiet enjoyment through

constructive eviction occurs when a lessor "changes some essential aspect of the

premises so substantially as to render the property unsuitable for the purposes for

which it is leased."  North Wales Assoc., Inc., v. Intown Properties, Inc., 152 F.

Supp. 2d 643, 645-46 (E.D. Pa. 2001). The interference must be "of a substantial

nature" and result in the tenant's abandonment of the premises.  Kuriger v.

Cramer, 498 A.2d 1331, 1338 (Pa. Super. Ct. 1985).

Constructive eviction sufficient to breach the covenant of quiet enjoyment

typically involves "a structural change resulting in a diminishment of the utility of

the leased premises" or "an overt restriction placed on the use of property." Kohl v. PNC Bank Nat'l Assoc., 912 A.2d 237, 249 (Pa. 2006).  For example, in 2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies of Greater Phila., 489 A.2d 733 (Pa. 1985), the court found that the landlord breached the new tenant's covenant of quiet enjoyment by extending the lease of a holdover tenant for the space previously leased to the new tenant.  In Checker Oil Co. Of Delaware v. Harold H. Hogg, Inc., 380 A.2d 815, 819 (Pa. Super. Ct. 1977), the court found that the landowner breached the tenant's covenant of quiet enjoyment by erecting a guardrail blocking one of two entries to tenant's gasoline station.  The court reasoned that "[t]he impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises."  380 A.2d at 819.  See also Pollock v. Morelli, 369 A.2d 458 (Pa. Super. Ct. 1976) (finding breach of covenant where landowner created mini-mall around tenant's drycleaning store).  A landlord's bad faith lawsuit that prevents the tenant from marketing the property may also constitute a constructive eviction.  See Kohl, 912 A.2d at 248-49.  Minor misdeeds on behalf of the landlord that do not substantially affect a tenant's use of the leasehold are not sufficient.  See North Wales Associates, Inc. v. Intown Properties, Inc., 152 F. Supp. 2d 643, 645-46 (E.D. Pa. 2001) (holding that landlord did not breach covenant of quiet enjoyment through the provision of substandard lease space because defendant did not show that simultaneous operation of heat and air conditioning systems and dirt discharge

13

from the air conditioner substantially rendered the property unsuitable);

Rittenhouse v. Barclay White, Inc., 625 A.2d 1208 (Pa. Super. Ct. 1993) (finding no

breach of covenant where landlord failed to obtain proper occupancy permits);

Perakis v. Lucerne Energy, Inc., 560 A.2d 814, 816 (Pa. Super. 1989) (finding no

breach where defendants did not present any evidence in support of assertion that

business opportunities relating to other properties may have been affected by sale

of leased premises); Derrickheim Co. v. Brown, 451 A.2d 477 (Pa. 1982) (noting that

normally, the existence of a cloud over title is not sufficient to breach the covenant

of quiet enjoyment).

To determine whether Clark's actions substantially affected ALG's use of the

premises, the court must first analyze the purposes for which ALG leased the

Harrisburg Site. The sublease specifically provides that ALG would use the

Harrisburg Site for "general warehouse purposes" and other "common and usual

purposes pertaining to [its] business." (Doc. 67-1 at 5). Absent ambiguity, the plain

meaning of the terms provided in the sublease control the court's inquiry

concerning the intentions of the parties. Drysdale v. Woerth, 153 F. Supp. 2d 678,

685 (E.D. Pa. 2001) (quoting Warren v. Greenfield, 595 A.2d 1308, 1311 (Pa. Super.

Ct. 1991) ("The intent of the parties to a written contract is regarded as embodied in

the writing itself.")).

ALG asserts that the predominant purpose of the sublease was to facilitate

operations under the TSA, pointing to the parties' previous Letter of Intent and the

TSA itself as support. ALG contends that CDS's failure to perform under the TSA

14

agreement rendered ALG's use of the Harrisburg Site unsuitable.[7]  However, it is well established that the parol evidence rule bars any extrinsic evidence of prior representations of the parties if the contract is fully integrated.  See Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 772 (M.D. Pa. 2008) (citations omitted).  If a written contract contains an integration clause, the court may not consider any other evidence of the parties' agreement outside the four corners of the contract.  Id.

ALG does not object to the Magistrate Judge's determination that the sublease was a fully integrated contract.  Rather, ALG asserts that the sublease is silent concerning the nature of ALG's "common and usual" business purposes and, therefore, the court must look to the parties' prior representations in the Letter of Intent and the TSA to determine the application of this term.[8]  (Doc. 100 at 6-7).

---

[7] Clark emphasizes that the TSA–a separate, fully-integrated contract between ALG and another entity–cannot be used to find that Clark breached ALG's covenant of quiet enjoyment.  In response, ALG alleges that CDS was acting as an agent or alter-ego of Clark.  See Checker Oil, 380 A.2d at 818 (stating that a covenant of quiet enjoyment "is breached when a tenant's possession is impaired by acts of the lessor or those acting under him" (quoting Pollock v. Morelli, 369 A.2d 458, 460 (1976))).  ALG also highlights several instances where Clark or Clark's counsel obfuscates any distinction between the two entities.  (See, e.g., Docs. 72 at 12-13, 102 at 16-17, 108 at 2-3).  The parties do not dispute that Clark is the parent company of CDS.  (See Doc. 67 ¶¶ 1, 5; Doc. 71 ¶¶ 1, 5).  For the purposes of summary judgment, the court concludes that a jury could reasonably determine that CDS was acting as Clark's agent for the purposes of determining whether Clark breached ALG's covenant of quiet enjoyment through CDS's non-performance of the TSA agreement.

[8] ALG raises this substantive argument for the first time in its objections to the R&R.  As discussed supra, this is improper.

If a fully integrated contract contains an ambiguous term, the court may evaluate parol evidence to clarify and define the ambiguous contractual term. Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001); see also Neff v. Cooper Hosp./Univ. Medical Center, Civ. A. No. 96-5875, 1999 WL 667283, at *8 (E.D. Pa. Aug. 24, 1999) ("Where, as in this case, the Court determines that a contract with an integration clause contains ambiguous terms, it is appropriate to receive in evidence parol evidence . . . to explain the meaning of the ambiguous terms."). A term is ambiguous if it possesses two or more meanings or it could be understood in more than one way. Mellon Bank, N.A. v. Aetna Business Credit, 619 F.2d 1001, 1011 (3d Cir. 1980). In other words, when the court can divine the term's meaning "without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends," the term is not ambiguous. Baney v. Eoute, 784 A.2d 132, 136 (Pa. Super. Ct. 2001).

In the case *sub judice*, the term "common and usual" business purposes is not ambiguous. It is not a term that is capable of two meanings in the present circumstances. Indeed, the parties do not dispute its application: ALG agrees with Clark that the Sublease contemplated the use of the Harrisburg Site for operations under the TSA agreement as well as for other business operations, such as ALG's eventual co-mail and co-palletization operations. (See Doc. 67 ¶ 10; Doc. 71 ¶ 10). The parties' dispute centers on the relative importance of the TSA operations to ALG's enjoyment of the premises. This is not a question of contract interpretation, nor a question of the parties' intent behind creating the sublease. It is simply a

16

question of fact.  The court is barred from examining prior representations of the parties to determine the intent behind the sublease under the parol evidence rule, but the court is certainly not barred from considering extrinsic evidence concerning whether ALG's "common and usual" business use of the property was substantially disturbed by CDS's inaction under the TSA.[9]

In this vein, the R&R concludes that Clark did not violate ALG's right to quiet enjoyment of the premises through constructive eviction because ALG could have continued to use the premises for business purposes other than those contemplated under the TSA.  (Doc. 99 at 17-18).  However, constructive eviction may occur in situations where the property remains technically usable for its intended purpose.  For example, the tenants of the properties at issue in Checker Oil Co. and Pollock were able to continue their business operations, but the landlord's structural changes substantially diminished the utility of using those premises for business purposes.  Similarly, ALG was certainly capable of continuing to enter and use the Harrisburg Site for other business purposes, but a jury could reasonably find that its inability to conduct business operations pursuant to the TSA substantially diminished the utility of using the Harrisburg Site for business purposes.  It is undisputed that, as of November 2010, ALG's only business use of the Harrisburg Site was for operations pursuant to the TSA.  (See Doc. 67 ¶ 10; Doc.

---

[9] Thus, the Magistrate Judge did not err in referencing ALG's Response to Statement of Facts (Doc. 71) and the deposition testimony of ALG's CEO (Doc. 68-2) to describe ALG's "common and usual" business purposes.  (Doc. 99 at 17-18; Doc. 100 at 7).

71 ¶¶ 10, 62; Doc. 76 ¶ 62).  A factfinder could reasonably conclude that ALG did not

unilaterally decide to abandon the Harrisburg Site by diverting and removing its

commodities, but instead that CDS's non-performance under the TSA forced its

hand, resulting in a constructive eviction.[10]  Thus, Clark is not entitled to judgment

as a matter of law and its summary judgment motion must be denied.

> 2.   *Actual Eviction*

According to the R&R, a jury could not reasonably conclude that Clark

actually evicted ALG.  ALG argues that actual eviction occurred when Clark and

CDS's counsel sent ALG a letter dated December 17, 2010, directing ALG to "cease

shipping of any additional [c]ommodities and make arrangements to collect all

[c]ommodities located at CDS facilities."  (Docs. 71 ¶ 85, 76 ¶ 85).  The Magistrate

Judge reasons that Clark did not actually evict ALG pursuant to this letter because

---

[10] ALG also appears to argue that Clark constructively evicted ALG by "forcibly removing" ALG's commodities from the Harrisburg Site in November 2010 "without ALG's knowledge or consent."  (Doc. 72 at 10).  ALG claims that "Clark/CDS's removal of ALG's commodities from the facility rendered the facility virtually useless to ALG."  (Id. at 11).  The R&R does not directly address this theory, presumably because it lacks any evidentiary support.  The factual scenario is far more nuanced: in November 2010, ALG staged a number of loads for CDS to deliver to CDS's competitor, Nationwide, for ultimate delivery to USPS.  (Docs. 71 ¶ 83, 76 ¶ 83).  ALG alleges that CDS failed to deliver that freight as staged; the freight was loaded in a largely disorganized manner and sent to Nationwide.  (Docs. 71 ¶ 84, 76 ¶ 84).  That ALG was dissatisfied with the methods CDS employed to deliver this freight to Nationwide does not equate to "forcible removal" of ALG's commodities "without ALG's knowledge or consent."  The court finds that a reasonable jury could conclude that CDS's non-performance under the TSA forced ALG to divert and remove its commodities, thus constituting a constructive eviction, but the court finds no factual support in the record for the theory that Clark or CDS constructively evicted ALG from the Harrisburg Site by virtue of "forcible removal" of commodities.

ALG's decision to withhold rental payments occurred in November 2010.  (Doc. 99 at 18).  In its objections, ALG highlights credible record evidence indicating that ALG's last rent payment in November 2010 actually represented the pre-payment of rent for the month of December.  (<u>See</u> Doc. 67 ¶ 42, Doc. 71 ¶ 42, Doc. 67-1; <u>compare</u> Doc. 68-9 at 13-14 <u>with</u> Doc. 68-9 at 15-17).

Clark asserts that the timing of ALG's final rent payment is irrelevant because the evidence indicates that (1) ALG's *decision* to cease rent payments occurred in November 2010 and (2) ALG actually removed its commodities from the Harrisburg Site in November 2010.  (Doc. 101 at 4 n.4, 13, 13 n.6).  This argument is unavailing: the actual withholding of rental payments, as opposed to the decision to do so in the future, constitutes a breach.  Moreover, Clark does not identify any provision in the sublease indicating that ALG's removal or diversion of commodities from the Harrisburg Site would *ex proprio vigore* constitute a breach of the sublease sufficient to negate ALG's implied covenant of quiet enjoyment. Regardless of ALG's internal *decision* to cease rent payments and to remove its commodities, as a function of its last rental payment, ALG was nevertheless entitled to quiet enjoyment of its leasehold at the Harrisburg facility through the end of December 2010.

Clark also contends that the December 17, 2010 letter's instruction for ALG to collect its commodities located at "CDS facilities" does not refer to ALG's

subleased space at the Harrisburg Site.[11]  (Doc. 101 at 13).  Clark explains that

"CDS" facilities" are the network of facilities listed as entry points in the TSA's

appendix.  (Id. at 13 n.7).  Clark further contends that the letter could not be

referencing ALG's Harrisburg Site because ALG had already shut down its

operations and removed its freight from the site in November.[12]  However, TSA's

appendix clearly lists Harrisburg as an entry point.  (See Doc. 67-3 at 11-12).  ALG

also presents evidence indicating that ALG understood the letter's demand to

include the Harrisburg facility as a whole.  (See Doc. 71-1 at 152-53).  A factfinder

could reasonably conclude that Clark's letter is a directive, ordering ALG to vacate

---

[11] According to Clark, the focal point of the December 10th letter is CDS and the TSA.  (See Doc. 71-12, Exh. 35).  Thus, Clark asserts that the letter cannot be construed as an eviction of ALG under the sublease.  As discussed supra, ALG cites several instances where Clark or Clark's counsel obfuscates the two entities.  (See, e.g., Docs. 72 at 12-13, 102 at 16-17, 108 at 2-3).  Under the circumstances, a factfinder could reasonably interpret the letter to include a demand from Clark that ALG remove its commodities from its subleased space at the Harrisburg Site.

[12] It is unclear whether ALG had completely removed all of its materials from the Harrisburg Site by December 17, 2010, and, unfortunately, the parties do not address this issue in their respective statements of fact.  (See Docs. 67, 71, 76).  However, Jim Hezinger, ALG's CEO, testified that, prior to the December 17, 2010 letter, he "already cleaned out everything out of the facility."  Yet, immediately thereafter, he states that Clark informed him that there was "one truckload of mail still sitting here."  (Doc. 71-1 at 152-53).  In contrast, Clark admits that "80 pallets of ALG's commodities and miscellaneous items occupy the space to this day."  (Doc. 101 at 10).  Clark highlighted this fact for the first time in its response to ALG's objections in order to support its constructive eviction argument.  The parties' subsequent briefings dissolve into a discussion of whether the court may consider this fact and extraneous factual issues concerning ALG's attempts to pick up this remaining freight.  The court did not consider these issues except to determine, for purposes of ALG's actual eviction claim, that factual issues remain concerning the amount of ALG's material that remained at the Harrisburg facility on December 17, 2010.

the Harrisburg Site.  Thus, ALG's defense of actual eviction to Clark's breach of

contract claim must survive summary judgment.

C.      **Remaining Claims**

ALG further objects to the Magistrate Judge's recommendation that the

Sublease case should remain open pending resolution of ALG's third-party

complaint against CDS for liability on the sublease.  (Doc. 99 at 19; Doc. 100 at 14).

ALG contends that this recommendation is contradictory in light of the Magistrate

Judge's rejection of ALG's theories of constructive eviction and the breach of the

covenant of quiet enjoyment, upon which ALG's third-party complaint against CDS

is substantially based.  (Id.)  In other words, the parties agree that the validity of

ALG's third-party complaint rises and falls with the validity of ALG's affirmative

defenses against Clark's breach of contract claim.  (Doc. 100 at 14-15, 101 at 15).

The court will not grant summary judgment to Clark on its breach of contract claim

and, therefore, the entirety of the Sublease case, including ALG's third-party

complaint against CDS, must remain open.

**IV.**   <u>**Conclusion**</u>

For the foregoing reasons, the court will adopt the R&R in part and deny it in

part.  The court will deny CDS's motion for partial summary judgment as moot as it

relates to ALG's counterclaims in the TSA case.  The court will also deny Clark's

motion for summary judgment in the Sublease case.  An appropriate order follows.

      /S/ CHRISTOPHER C. CONNER
      Christopher C. Conner, Chief Judge
      United States District Court
      Middle District of Pennsylvania

Dated:      March 31, 2014