**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLARK DISTRIBUTION | : | CIVIL ACTION NO. 1:10-CV-02575 |
| SYSTEMS, INC., | : | Consolidated with 1:11-CV-1299 |
| | : | |
| Plaintiffs, | : | |
| | : | (Chief Judge Conner) |
| v. | : | |
| | : | |
| ALG DIRECT, INC., | : | |
| | : | (Magistrate Judge Schwab) |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

In this consolidated civil action, arising out of a transportation services agreement ("TSA") between plaintiff, Clark Distribution Systems, Inc. ("CDS"), a freight forwarder, and defendant, ALG Direct, Inc. ("ALG"), a logistics provider, CDS has filed a partial motion to dismiss ALG's amended counterclaim. For the reasons set forth herein, I recommend that the motion be granted.

## I.    Background and Procedural History.

CDS initiated this action on December 17, 2010, when it filed a complaint against ALG for breach of contract. *Doc.* 1. In the complaint, CDS also raised a claim for negligent misrepresentation against Patrick Del Monico ("Del Monico"); however, on April 20, 2011, Del Monico was voluntarily dismissed. *Doc.* 21. Thereafter, on July 29, 2011, the Court granted ALG's motion to dismiss for lack of subject matter jurisdiction, but CDS was granted leave to amend its complaint.

*Id.* On the same date that the Court dismissed CDS' complaint for lack of subject matter jurisdiction, CDS filed a proper amended complaint. *Doc.* 33.

In the amended complaint, CDS brought a breach of contract claim against ALG, seeking payment for services rendered under a TSA. *Id.* According to the amended complaint, CDS is a Delaware corporation with its principal place of business in New Jersey and a "major hub of operations" in Mechanicsburg, Pennsylvania. CDS is a provider of distribution logistics services to the publishing and printing industries – also known as a "freight forwarder." ALG, on the other hand, is an Illinois corporation where its principle place of business is also located. ALG is a logistics provider in the business of coordinating the distribution of printed materials. On June 28, 2010, ALG and CDS entered into a TSA, wherein CDS agreed to furnish transportation and related services as directed by ALG for the transportation of printed matter and materials, equipment, and supplies for distribution to United States Postal Service ("USPS") locations and other locations. Per the amended complaint, much of the material tendered by ALG to CDS was in an unacceptable condition and the volume of product provided by ALG to CDS was 100% greater than before the TSA went into effect. As a result, CDS filed this civil action claiming that ALG owes damages in unpaid shipment invoices, an

additional amount for processing the higher-than-anticipated volume of materials, and for converting the materials into a condition acceptable to the USPS.[1]

On January 26, 2012, several months after the amended complaint was filed, the Court granted a joint motion to consolidate this matter with a related action, *Clark Group, Inc. v. ALG Direct, Inc.* (No. 1:11-CV-1299, CCC)("The Sublease Case"). *Doc.* 48. In the Sublease Case, plaintiff, Clark Group, Inc. ("Clark"), filed a complaint against ALG for breach of contract seeking payments for rent under the terms of a sublease executed between the parties. (1:11-CV-1299, *Doc.* 1). Generally, following a breakdown in the business relationship between CDS and ALG, under the terms of the TSA, Clark claims that ALG abandoned the Mechanicsburg, Pennsylvania facility that it had subleased. Upon answering Clark's complaint, ALG filed a third-party complaint against CDS. (1:11-CV-1299, *Doc.* 9). Generally, in the third-party complaint, ALG claims that it should not be liable to Clark for any damages because CDS tortuously interfered with the sublease through its alleged abandonment of the TSA. *Id.* As well, ALG rebukes liability on grounds that CDS and Clark conspired to cause it to default on the sublease. *Id.*

In pertinent part, ALG alleges the following in support of its third-party tort claims:

---

[1]     The damages sought by CDS are in excess of the jurisdictional threshold amount. *See* 28 U.S.C. § 1332.

35. CDS' interference with ALG's sublease and abrupt eviction of ALG from the premises of Clark at Harrisburg, PA by CDS caused foreseeable damages in the amount of business ALG lost when customers condemned ALG for inadequate service.

WHEREFORE, [ALG] prays this Honorable Court to enter judgment against [CDS] for any damages for which [ALG] is found liable to [Clark], if any; for damages arising from the movement of commodities; damages for the loss of customers and their business and other damages; plus all costs and fees and any other relief this Court finds just and appropriate.

41. Clark and CDS acted in concert knowing and intending that ALG's termination of use and quiet enjoyment of the Sublease would cause injury to ALG by causing customer claims for damages, customer dissatisfaction resulting in damages to ALG by a loss of business, by causing damages due to costs to move and re-work product in the subleased warehouse, and, by causing a breach of the Sublease allowing a claim for payment by Clark.

WHEREFORE, [ALG] prays this Honorable Court to enter judgment against [CDS] for any damages for which [ALG] is found liable to [Clark], if any; any damages by loss of customers; any damages by movement and re-working of commodities; all costs and fees; and any other relief this Court finds just and reasonable.

*Id.* at ¶¶ 35, 41.  On November 14, 2011, CDS filed its answer to ALG's third-party complaint, but did not seek to dismiss the above-referenced claims for loss of business damages.  (1:11-CV-1299, *Doc.* 12).

On September 10, 2012, after the cases had been consolidated, ALG answered CDS' amended complaint in the TSA Case.  *Doc.* 57.  Along with its answer, ALG contemporaneously raised counterclaims for breach of contract (four

counts), tortious interference with the sublease that ALG maintained with Clark, promissory estoppel, and negligent misrepresentation.  *See generally, id.*

In pertinent part, ALG alleged the following in connection with its counterclaim for tortious interference with quiet enjoyment of ALG's and Clark's sublease:

> 92. [CDS'] interference with ALG's sublease and the abrupt eviction of ALG from the premises by Clark caused foreseeable damages in the amount of business ALG lost when customers condemned ALG for inadequate service.
>
> WHEREFORE, ALG prays of this Honorable Court for a judgment against [CDS] for the damages caused by the loss of customers; the damages arising pursuant to the sublease; transportation damages … and shipment handling damages, and any other relief that this Court finds just and appropriate.

*Id.* at ¶ 92.  Similarly, in connection with its counterclaim for promissory estoppel, ALG alleged the following:

> 100. Except for [CDS'] promises and inducements for ALG to rely upon [it] at the Harrisburg facility, ALG would not have suffered any of the damages, exposures to claims, exposure to litigation instituted against ALG, loss of business and other impairments to ALG's mail consolidation business.

*Id.* at ¶ 100.

Thereafter, once the discovery and dispositive motions deadlines had lapsed, *see Doc.* 63, and following the Court's Order staying all pre-trial and trial deadlines, *Doc.* 89, ALG filed a motion to amend its counterclaim.  *Doc.* 90.   On the same date that the Court granted ALG's motion, ALG filed an amended

counterclaim.  *Docs.* 92 & 93.   In the amended counterclaim, ALG abandons

certain claims that are set to be heard in the Illinois State Courts.  *See Doc.* 90 at ¶¶

5-6; *Doc.* 93.   Moreover, ALG's amended counterclaim includes three counts for

breach of contract (one of which seeks indemnification), a count for tortious

interference with the sublease, and a count for promissory estoppel.  *Doc.* 93.  For

the first time, however, ALG alleges, in connection with one of its breach of

contract counterclaims, that "[it] has lost a significant amount of business from …

affected customers, totaling approximately $ 2, 135, 205.01."  *Id.* at ¶ 55.

CDS now moves for partial dismissal, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, of ALG's contractual claim for loss of business

damages  *Doc.* 94.  The parties have filed their respective briefs, and the motion is

ripe for disposition on the merits.  *Docs.* 95, 97, & 98.

## II.    <u>The Motion to Dismiss Legal Standard.</u>[2]

As stated, *supra*, CDS moves to partially dismiss paragraph 55 of ALG's

amended counterclaim in accordance with Rule 12(b)(6) of the Federal Rules of

Civil Procedure, which provides that a pleading should be dismissed for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In ruling

on such a motion, "[c]ourts use the same standard in ruling on a motion to dismiss

---

[2]    The Court maintains diversity jurisdiction over this action in accordance
with 28 U.S.C. § 1332.

a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint." *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F.Supp.2d 520, 524 (W.D. Pa. 2011) (citing *United States v. Union Gas Co.*, 743 F.Supp. 1144, 1150 (E.D. Pa. 1990)).

Accordingly, when ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the [counterclaim] in the light most favorable to the [counter claimant], and determine whether, under any reasonable reading of the [counterclaim], the counter claimant] may be entitled to relief." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). In addition to reviewing the facts contained in the counterclaim, the court may also consider "matters of public record, orders, exhibits to the [counterclaim] and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the counterclaim to provide "the [counter] defendant fair notice of what the ... claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 232 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).   To test the sufficiency of the counterclaim, the court must conduct a three-step inquiry. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130–31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a [counter claimant] must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of the counterclaim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. *Id.*; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556); *Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the [counter claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When the counterclaim fails to present a *prima facie* case of liability, courts should generally grant leave to amend.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116–17 (3d Cir. 2000).

III.    **Discussion.**

In its motion, CDS argues that paragraph 55 of ALG's amended counterclaim claiming damages for loss of business should be dismissed because the express language in Article 14(d) of the TSA bars any claim for loss of business damages.   CDS further asserts that since discovery is now closed, permitting ALG to raise such a claim, for the first time, would be unjust.  *Doc.* 95 at 4-5.  In opposition, ALG raises four arguments.

First ALG argues that CDS' motion is untimely in light of the Court's dispositive motions deadline, especially since this allegation is not new and has been previously referenced in ALG's third-party complaint and original counterclaim.  *Doc.* 97 at 4-5.  Second, ALG contends that it would not be unjust to permit the claim for loss of business damages to stand, even if newly asserted, because CDS was effectively put on notice, through discovery, that ALG was seeking said damages.  *Id.* at 6-7.  Third, ALG alternatively contends that even if its first two arguments fail, the portion of the TSA agreement relied upon by CDS has no applicability to the damages sought because that portion of the TSA applies only to indemnification of third-party claims; not claims for losses between the parties themselves.  *Id.* at 7-10.   Fourth, ALG contends that the issue raised in CDS' motion is moot because the same type of damages are being sought, without

challenge, in connection with ALG's tort claims in the third-party complaint and amended counterclaim.

### A. Timeliness of CDS' motion.

Since a finding that CDS' motion is untimely would render all other issues moot, I begin here by first examining the timeliness of CDS' motion in accord with the Federal Rules of Civil Procedure.  In pertinent part, under Rule 15(a)(3), any required response to an amended pleading must be made within 14 days after service thereof.  Fed.R.Civ.P. 15(a)(3); *but see* Fed.R.Civ.P. 6(a) & (d) (adding three days to the response period for legal documents or pleadings that are served *via* mail or electronically).  Further, a Rule 12(b)(6) motion may be filed by a plaintiff, challenging a defendant's counterclaim, if the motion is made before filing any other response.  *See* Fed.R.Civ.P. 12(b); *see also, e.g., Protica, Inc. v. iSatori Tech., LLC*, No. 2011-CV-01105, 2012 WL 1071223 (E.D. Pa. Mar. 30, 2012)(addressing plaintiff's 12(b)(6) motion against the defendant's amended counterclaim).

In this matter, the amended counterclaim was filed on August 5, 2013.  *Doc.* 93.  Furthermore, ALG served the amended counterclaim on CDS *via* the Court's electronic docketing system and U.S. Mail.  *Id.* at 23.  Under the Federal Rules, therefore, CDS had until August 21, 2013 to timely file its dismissal motion, rendering CDS' motion timely under the Federal Procedural Rules.  *See Doc.* 94.

ALG's argument, though, is centered primarily on the Court's own deadlines set forth in the case management plan.  Pursuant to said plan, which was later amended, the last date to file dispositive motions was on April 15, 2013.  *Doc.* 63. Strictly adhering to that deadline would indeed render CDS' motion untimely.  It would be fundamentally unfair, though, for the Court to permit ALG to amend its counterclaim and include new claims or allegations, but not permit CDS an opportunity to challenge the content thereof; especially where the Federal Procedural Rules permit such a response from the opposing party.  Consequently, ALG's argument in this regard should fail.

Last, I disagree with ALG that the damages claim raised in its third-party complaint and previous counterclaim precludes CDS from proceeding on its dismissal motion.  As CDS points out in its reply brief, ALG's other claims for loss of business damages (i.e. those contained in the third-party complaint and previously raised in the original counterclaim) were not connected to any breach of contract claim.  Therefore, to say that the claims for loss of business damages grounded in ALG's tort claims plausibly put CDS on notice that it was seeking the same type of damages in the context of a claim for breach of contract, flies squarely in the face of the pleading standards discussed in both *Twombly* and *Iqbal*, *supra*.  Consequently, I find that CDS' motion is timely and recommend that the Court finds the same.

### A. Mootness of CDS' motion.

Like the issue of timeliness, if CDS' motion is moot, then the substance of the motion falls by the wayside.   Pursuant to Article III of the United States Constitution, the judicial power of the federal courts extends only to cases or controversies.   *See* U.S. CONST. art. III, § 2, cl. 1.   This "case or controversy" requirement prevents federal courts from deciding cases, or issues, which are moot. *See, e.g., Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n. 3 (1964).   Generally speaking, a specific issue, like a case, becomes moot when it is no longer live or the parties lack a cognizable interest in the outcome.   *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

Here, ALG argues that CDS' motion is moot because even if the Court were to rule in CDS' favor, the damages claim that is being challenged would remain elsewhere *via* ALG's tort claims in the third-party complaint and amended counterclaim.   In so arguing, however, ALG overlooks the simple fact that once this case proceeds to trial, which it is currently on track for doing since CDS' and Clark's omnibus summary judgment motion was recently denied (*Doc.* 110), it is possible that a verdict could be returned against ALG on its tort claims, but in its favor on the breach of contract claims.   In that posture, to deny CDS' motion as moot could have a substantial impact on CDS.   Thus, this issue is live and CDS has

a cognizable interest in a determination on the outcome of this motion.  The Court, therefore, should find that CDS' motion is *not* moot.

**B. ALG's amended counterclaim for loss of business damages.**

In support of its motion to dismiss, CDS contends that the express language of Article 14(d), in the TSA, bars any claim for loss of business damages.  *Doc.* 95 at 4.  In pertinent part, Article 14(d) provides:

> NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO ANY LOSS OF USE, *LOSS OF BUSINESS* OR LOSS OF PROFIT….

*Doc.* 33-1 at 6 (emphasis added).  In addition, CDS argues that ALG's claim for loss of business damages should also be barred because it is being raised so late in the proceedings, after the discovery period has closed.  *Doc.* 95 at 5.

In opposition, ALG argues that Article 14(d) has no applicability to its amended counterclaim for loss of business damages because it is being raised pursuant to Article 8, which deals exclusively with liability between the parties. *Doc.* 97 at 7.  Article 8 provides, in relevant part, that "CDS [would assume] *full liability* for *loss*, theft, damage, *delay* or destruction of any and all Commodities which are under CDS' care, custody or control."  *Doc.* 33-1 at 3-4 (emphasis added).  In making its argument, ALG points out that it references the Article 8

13

procedures for recovering losses in the amended counterclaim, *via* the respective claims procedure (*see Doc.* 93 at ¶ 53), and includes an entirely separate counterclaim seeking indemnification, but not for lost business damages. As well, ALG contends that a plain reading of Article 14(a) makes it clear that the indemnification section of the TSA only covers claims for damages arising from third-party claims.[3]  *Doc.* 97 at 7-8; *Doc.* 33-1 at 5. As such, ALG argues, the limited liability clause in Article 14 has no application to claims for losses incurred between the parties. *Doc.* 97 at 8.

ALG further addresses CDS' argument that it would be unjust to permit this damages claim to proceed in the amended counterclaim because the discovery period is closed. According to ALG, in answers to interrogatories served on CDS' counsel, ALG included amounts for "lost revenues from lost customers" in response to an interrogatory asking ALG to "[l]ist in itemized fashion all damages that . . . ALG has incurred. . . ." *Id.* at 6; *Doc.* 97-4 at 5-6. Furthermore, ALG asserts that CDS' counsel took the deposition of ALG's Director of Risk

---

[3]    ALG's position here is suspect in that it is in sheer contrast to its own, earlier argument in a 12(b)(6) motion that sought the dismissal of CDS' damages claims for processing higher than anticipated volumes of materials and for converting materials to an acceptable condition. In that earlier motion, which was ultimately denied by the Court, (*Doc.* 56), ALG invoked Article 14(d) to argue that CDS' damages claims were barred under the TSA. At no time, however, did ALG take the position that Article 14(d) related solely to indemnification of claims brought by third parties.

Management, Glen Hall ("Hall").  During that deposition, Hall made references to customers that ALG had lost, and an implicit inference could be made from those references that the lost customers resulted from the underlying events.  *Doc.* 97 at 6; *see Doc.* 97-5 at 14, 17, 18, 22, 23, 24.  CDS, however, did not follow up on any of this testimony in subsequent discovery requests; therefore, ALG argues, CDS should be now precluded from claiming injustice or prejudice.  *Doc.* 97 at 6-7.

### 1.  Construction of the TSA.

As a federal court exercising diversity jurisdiction in this case, I am obliged to apply the substantive law of Pennsylvania.  *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).  When the terms of a contract are clear and unambiguous, its meaning "must be determined from the four corners of the contract." *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) ("When the words are clear and unambiguous, the intent of the parties must be determined from the express language of the agreement." (internal quotation marks omitted)). In contrast, "if the written contract is ambiguous, a court may look to extrinsic evidence to resolve the ambiguity and determine the intent of the parties." *Glenn Distribs.*, 297 F.3d at 300. A contract provision is ambiguous under Pennsylvania law:

> [I]f, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (internal quotation marks omitted).  Furthermore, the provisions of a contract must also be construed, and in a whole and harmonized manner, if possible, so that all of the terms are given reasonable effect, *Contrans, Inc. v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 169 (3d Cir. 1987); not in a manner "render[ing] provisions meaningless, superfluous, . . . contradictory, or [leading] to absurd results." *Good Will Hunting Club, Inc. v. Range Res., Inc.*, No. 4:11-CV-1152, 2012 WL 722614, at *3 (M.D. Pa. Mar. 1, 2012)(citing *Lesko v. Frankford Hospital-Bucks County*, 15 A.3d 337 (Pa. 2011)).  Thus, a construction which makes a contract fair, customary, or prudent is preferred.

Here, contrary to ALG's assertions, I find that Article 14(d) is unambiguous, broadly worded and encompasses claims for loss of business damages between the contracting parties, in this case ALG and CDS.[4]  Notably the language of Article

---

[4]     Under Pennsylvania law, provisions regarding the limitation of damages, such as Article 14(d), are generally enforceable unless they are determined to be unconscionable.  *Factory Market, Inc. v. Schuller Intern., Inc.,* 987 F.Supp. 387,

14(d) includes the only provision in the TSA that is overtly emphasized, with the pertinent words spelled out in all capital letters.   Unlike Article 14(a) which specifically references indemnification claims of third parties, Article 14(d) contains no such limiting language.   *Id.*   Moreover, the general heading of Article 14-- "Indemnification"---is not inherently limited to third-party claims.   As the court in *STS Holdings, Inc. v. CDI Corp.*, No. 99-3480, 2004 WL 739869 (E.D. Pa. Mar. 19, 2004), explained:

> Indeed, numerous courts have held that the term "indemnification" simply means "compensation" for loss- whether the loss is caused by a party to the agreement or by a third party. *See, e.g, Yang Ming Marine Trans.Corp. v. Okamoto Freighters Ltd.,* 259 F.3d 1086, 1092 (9th Cir. 2001) (plain and unambiguous meaning of indemnity is not to compensate for losses caused by third parties, but merely to compensate); *Litton Microwave Cooking Prod. v. Leviton Mfg.Co.,* 15 F.3d 790, 796 (8th Cir.1994) ("Only a strained reading could produce [a] third- party suit requirement ... on the indemnity clause."); *Dan River, Inc. v. PYA/Monarch, Inc.,* 1994 WL 510462 (4th Cir. Sept.20, 1994) ("The term 'indemnification' includes an agreement to hold another harmless from the legal consequences of an act of one of the parties to the agreement....There is no requirement that the action be brought by a third person."); *Atari Corp. v. Ernst & Whinney,* 981 F.2d 1025, 1031–32 (9th Cir.1992) ("The district court was wrong to assume that the word 'indemnify' necessarily carries with it the baggage of the clauses in which it most frequently appears.").

*Id.* at *2.

---

399-400 (E.D. Pa. 1997). Since neither party suggests that Article 14(d) is unconscionable, I will assume that the provision is enforceable.

Thus, while third-party claims for lost business are among the claims prohibited by Article 14(d), claims between ALG and CDS are equally included. Had the parties intended the limitation of damages provision to apply solely to the indemnification of third-party claims, they should have expressly included such a provision in Article 14(d).

ALG's assertion that it is entitled to seek its lost business damages pursuant to Article 8 of the TSA is belied by the plain language of the article and the allegations in the amended counterclaim.  Article 8(a)'s provisions regarding loss, theft, damage, delay or destruction expressly relate to commodities and the shipments of the commodities under CDS' control and contain no references to loss of business or damages.  Further, contrary to ALG's contentions, paragraphs 53, 54 and Exhibit 5 of the amended complaint reference its customers' claims for late, undelivered, or mis-delivered commodities, but not claims for ALG's loss of business.  ALG's attempt to bring its lost business claim within the scope of Article 8, therefore, fails.  Accordingly, I find that the TSA precludes ALG's claim for loss of business damages against CDS and the damages claim should be dismissed.[5]

---

[5]    Since this finding resolves the dismissal motion, I dispense with a discussion of whether CDS would be prejudiced, or that it would be unjust, if ALG's amended counterclaim for lost business damages were allowed to proceed.

**IV.**   **Recommendation.**

Hence, for the foregoing reasons, **IT IS RECOMMENDED** that:

(1) CDS' partial motion to dismiss (*Doc.* 94) be **GRANTED**; and

(2) ALG's claim for loss of business damages (*Doc.* 93 at ¶ 55), made in

connection with its amended counterclaim for breach of contract, be

**DISMISSED** with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **28th** day of **April, 2014**.

*S/ Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge