IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | CIVIL ACTION NO. 1:10-CR-2575 |
| Plaintiff | (consolidated) |
| | (Chief Judge Conner) |
| v. | |
| **ALG DIRECT, INC.,** | |
| Defendant | |
| ================================================ | |
| **THE CLARK GROUP, INC.,** | |
| Plaintiff | |
| v. | |
| **ALG DIRECT, INC.,** | |
| Defendant/Third Party Plaintiff | |
| v. | |
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | |
| Third-Party Defendant | |

## MEMORANDUM

Presently before the court is plaintiff Clark Group, Inc.'s ("Clark") motion (Doc. 114) for reconsideration of the court's order (Doc. 110) denying plaintiff's omnibus motion (Doc. 65) for summary judgment. Clark asserts that the court committed a manifest error of law or fact by not considering whether ALG's failure to comply with the notice of default provision of the sublease made it impossible for ALG to succeed on its affirmative defenses of constructive and actual eviction. For the reasons set forth below, the court will grant the motion.

I.  **Factual Background**[1]

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG"). CDS, a freight forwarder, alleges that ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement. Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties.

On June 28, 2010, CDS and ALG entered into a Transportation Services Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for ALG. (Doc. 67 ¶ 4; Doc. 71 ¶ 4). During this same time period, ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site."). (Doc. 67 ¶ 7; Doc. 71 ¶ 7). ALG sought a Pennsylvania facility in which Clark would handle freight forwarding work pursuant to the TSA, while ALG handled separate co-mail and co-palletization operations *after* installing its own equipment. (Doc. 67 ¶ 10; Doc. 71 ¶ 10; Doc. 68-2 at 3).

The working relationship with the parties quickly broke down. ALG stopped paying invoices to CDS under the TSA in November 2010. (Doc. 67 ¶ 41; Doc. 71 ¶ 1). ALG also made its last rent payment under the sublease in November 2010, which reflected a pre-payment of rent for the month of December. (See Doc. 67

---

[1] The parties are familiar with the lengthy factual and procedural background of this case, which the court has recited in previous opinions. (See Docs. 32, 56, 109). The court will discuss only those facts which are relevant to the disposition of the instant motion.

¶ 42, Doc. 71 ¶ 42, Doc. 67-1; compare Doc. 68-9 at 13-14 with Doc. 68-9 at 15-17). The parties do not dispute that ALG never provided notice to Clark before it discontinued its rental payments.

CDS filed the instant action against ALG and its then-president, Patrick Del Monico[2] on December 17, 2010, asserting breach of contract and anticipatory repudiation against ALG. (Doc. 1 at 5-6). On July 29, 2011, the court granted ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend. (Doc. 32). CDS filed a proper amended complaint that same day, which alleges only breach of contract against ALG under the terms of the parties' transportation services agreement ("the TSA case"). (Doc. 33 ¶¶ 30-32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA case with Clark Group, Inc. v. ALG Direct, Inc. (Civ. A. No. 1:11-CV-1299) ("the Sublease case"). In the Sublease case, Clark alleges that ALG breached the terms of the sublease executed between the parties. (Civ. A. No. 1:11-CV-1299, Doc. 1). After answering the complaint, ALG filed a third-party complaint against CDS. (Civ. A. No. 1:11-1299, Doc. 9). In the third-party complaint, ALG claims that CDS tortiously interfered with the sublease by purportedly abandoning the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (Id.) On

---

[2] Clark initially alleged negligent misrepresentation against Del Monico. On April 20, 2011 Clark filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant. (Doc. 21).

3

November 14, 2011, CDS filed its answer to ALG's third-party complaint. (Civ. A. No. 1:11-1299, Doc. 12).

After consolidation, ALG answered CDS's amended complaint from the TSA case. (Doc. 57). In its answer, ALG asserted several counterclaims against CDS for damages allegedly caused by CDS's mishandling of freight. (Id.)

CDS and Clark filed an omnibus motion (Doc. 65) for summary judgment on April 15, 2013. Clark asserted that summary judgment in its favor is warranted in the Sublease case because ALG breached the sublease by withholding payment. (Doc. 66 at 7-9). ALG did not contest that it withheld payment, but instead asserted that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

The motion was referred to Magistrate Judge Susan E. Schwab, who filed a report and recommendation ("R&R") on December 3, 2013. (Doc. 99). The Magistrate Judge recommended that the court grant Clark's motion for summary judgment as it relates to the Sublease case, reasoning that record evidence does not support ALG's defenses of constructive or actual eviction. The court did not adopt this section of the R&R and instead denied Clark's motion for summary judgment in the Sublease case. (Doc. 109). The court found that the parties do not dispute that ALG withheld rental payments contrary to the sublease's terms. (Doc. 109 at 11). However, the court found that genuine issues of material fact existed concerning whether Clark breached ALG's implied covenant of quiet enjoyment

4

through actual or constructive eviction before ALG ceased making payments. (Id. at 11-21).

Clark filed the instant motion for reconsideration on April 11, 2014. (Doc. 114). The motion is fully briefed and ripe for disposition.

## II.    Legal Standard

The denial of a motion for summary judgment is an interlocutory order. Bines v. Kulaylat, 215 F.3d 381, 384 (3d Cir. 2000). The court may reconsider an interlocutory order whenever it is "consonant with justice to do so." Mohammad v. Kelchner, Civ. A. No. 03-1134, 2005 WL 1138468, at *2 (M.D. Pa. Apr. 27, 2005) (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)). An order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); see also Gallant v. Telebrands Corp., 35 F. Supp. 2d 378, 393 (D.N.J. 1998) ("a partial summary judgment order is subject to revision or vacation at any time prior to final judgment.").

Rule 59 does not formally apply to motions for reconsideration of an interlocutory order, but courts tend to grant motions for reconsideration "sparingly" and "only upon the grounds traditionally available" under Rule 59(e). A&H Sportwear Co., Inc. v. Victoria's Secret Stores, Inc., Civ. A. No. 94-7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001). Under Rule 59(e), a party seeking reconsideration must typically establish (1) a change in the law; (2) newly discovered evidence; or (3) the need to correct errors of law or fact or to prevent

manifest injustice. Mack's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995) (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)) *vacated in part on other grounds on reconsideration by* 915 F. Supp. 712 (M.D. Pa. 1996).

### III. Discussion

The instant motion revolves around a specific provision in the sublease:

> In the event [Clark] defaults in keeping, observing or performing any of the terms, provisions, covenants and conditions contained in the Lease or this Sublease, and such default is not cured (or proper corrective measures to cure such default commenced) by [Clark] within the periods specified for the curing of such defaults, [ALG] shall have the right to remedy such default after it gives written notice thereof."

(Doc. 67-1 ¶ 8).

In its opinion disposing of plaintiffs' motion for summary judgement, and before addressing the ALG's affirmative defenses of constructive and actual eviction, the court addressed what it perceived to be a new argument raised by Clark following the Magistrate Judge's issuance of her R&R. (Id. at 11 n.6). Specifically, the court noted that Clark appeared to raise two arguments concerning the sublease's notice provision: (1) that ALG breached the sublease by failing to

provide written notice of Clark's default under the sublease before withholding rental payments; an argument that was preserved and discussed by the parties prior to the issuance of the R&R; and (2) that ALG's failure to provide written notice constituted a waiver of the defenses of constructive and actual eviction; an argument that was raised for the first time subsequent to the issuance of the R&R (Id.)  The court understood that Clark was making the second argument based on a section of its brief in opposition to the Magistrate Judge's Report & Recommendation which was entitled "ALG waived its defenses by failing to follow the Sublease's dispute provisions." (Doc. 101 at 8).  Within this section, Clark argued that ALG's failure to follow the notice provision "waived its defenses as a matter of law." (Id. at 9).  The court noted that Clark did not provide any legal authority for the second argument and, indeed, had waived this argument by not raising it in its original briefings.  (Doc. 109 at 11 n.6).

The court never found that Clark waived its initial argument that ALG's affirmative defenses are *without merit* because ALG breached the sublease by failing to provide written notice of Clark's default under the sublease before withholding rental payments.  Instead, the court mistakenly concluded that, if ALG was able to establish constructive or actual eviction sufficient to show Clark's violation of an implied covenant of quiet enjoyment, ALG's compliance or non-compliance with the other provisions of the Sublease was irrelevant.

In its reply brief in support of the instant motion, Clark now emphasizes that the covenant of quiet enjoyment at issue in this case is an *express* covenant.  (Doc.

7

118 at 7). The exact parameters of an express covenant of quiet enjoyment may be limited by the terms of the lease. Kohl v. PNC Bank Nat. Ass'n, 912 A.2d 237, 248 (Pa. 2006) (citing Checker Oil Co. of Del., Inc. v. Harold H. Hogg, Inc., 380 A.23d 815, 818 (Pa. Super. Ct. 1977). In this case, ALG's right to quiet enjoyment is limited by the terms of the lease and sublease, including the notice provision. Specifically, the lease expressly provides that "[i]f tenant shall perform all of the covenants and agreements herein required to be performed by Tenant, Tenant shall, subject to the terms of this Lease, at all times during the Lease Term, have peaceful and quiet enjoyment of the Premises against any person claiming by, through or under Landlord." (Doc. 67-2 ¶ 20). The lease also states that Clark "shall not be in default hereunder unless Landlord fails to perform any of its obligations hereunder within 30 days after written notice from Tenant specifying such failure." (Id. ¶ 25). The sublease expressly incorporates all the terms, provisions, covenants and conditions of the lease. (Doc. 67-1 ¶¶ 4, 12).

Thus, ALG's right to quiet enjoyment was expressly contemplated by the lease and sublease and limited by its terms. Under the lease provisions, Clark could not have even defaulted on the express covenant of quiet enjoyment provision unless it continued to act in contravention of the lease's terms for 30 days after ALG provided written notice specifying Clark's failure to perform its obligations. (See Doc. 67-2 ¶ 25). Further, under the sublease, ALG did not have the right to withhold rent based on Clark's default on the express covenant of quiet enjoyment provision until it gave Clark written notice. (See Doc. 67-1 ¶ 8).

8

ALG is correct that under the common law, a breach of the covenant of quiet enjoyment will typically excuse the tenant's non-payment of rent and otherwise discharge the tenant's obligations under the agreement.  See 2401 Pennsylvania Ave. Corp. v. Federation of Jewish Agencies, 466 A.2d 132, 139 (Pa. Super. Ct. 1983); see also Ott v. Buehler Lumber Co., 541 A.2d 1143, 1145 (Pa. Super. Ct. 1988) (citing the general rule that "a party . . . may not insist upon performance of the contract when he himself is guilty of a material breach of the contract."); Chelten Ave. Bldg. Corp. v. Mayer, 172 A. 675, 676-77 (Pa. 1934) ("if a landlord evicts his tenant from the demised premises, his right to recover rent during the period of such eviction is suspended, and that any act of a landlord which deprives his tenant of that beneficial enjoyment of the premises to which he is entitled under his lease will amount in law to an eviction and suspend the rent.").  However, the lease and sublease at issue in this case expressly modified the terms under which the covenant of quiet enjoyment may be breached or under which a breach of the covenant may be remedied.  ALG did not provide Clark with appropriate notice as required by the provisions of the lease and sublease before withholding rent.  Thus, even if a jury could reasonably conclude that Clark constructively or actually evicted ALG from the Harrisburg Site, it would not excuse ALG's unilateral decision to withhold rent.  The court concludes that ALG breached the provisions of the sublease and Clark is entitled to judgment as a matter of law on its breach of contract claim.

9

The court's holding may cast doubt on the viability of ALG's third-party complaint against CDS for liability on the sublease. (Civ. A. No. 1:11-1299, Doc. 9). In this complaint, ALG claims that CDS tortiously interfered with the sublease through its alleged abandonment of the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (Id.) ALG acknowledges that its third-party complaint "is based almost entirely on Clark's constructive eviction and breach of ALG's right to quiet enjoyment." (Doc. 100 at 14-15). Moreover, the court has observed that "the parties agree that the validity of ALG's third-party complaint rises and falls with the validity of ALG's affirmative defenses against Clark's breach of contract claim." (Doc. 109 at 21). However, the court's decision that Clark is entitled to summary judgment on its breach of contract claim against ALG is not based on the underlying validity of ALG's defenses of constructive or actual eviction. Instead, the court's decision is based on the fact that ALG did not have the right to withhold rent payments under the terms of the sublease without first providing notice, regardless of whether its right to quiet enjoyment was breached. The court will direct the parties to confer on this issue and, if divergent, to submit letter correspondence to the court outlining their respective positions. In the interim, ALG's third-party complaint against CDS for liability on the sublease survives.

## IV.     Conclusion

For the foregoing reasons, the court will grant Clark's motion for summary judgment in the Sublease case. An appropriate order follows.


                                                  /S/ CHRISTOPHER C. CONNER
                                                 Christopher C. Conner, Chief Judge
                                                 United States District Court
                                                 Middle District of Pennsylvania


Dated:       May 29, 2014