## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 1:10-CR-2575** |
| **Plaintiff** | : | **(consolidated)** |
| | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ALG DIRECT, INC.,** | : | |
| **Defendant** | : | |

==========================================

| | |
|---|---|
| **THE CLARK GROUP, INC.,** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **ALG DIRECT, INC.,** | : |
| **Defendant/Third Party Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **CLARK DISTRIBUTION SYSTEMS, INC.,** | : |
| **Third-Party Defendant** | : |

## MEMORANDUM

Presently before the court is defendant ALG Direct, Inc.'s ("ALG") motion (Doc. 129) for reconsideration of the court's order (Doc. 120) granting plaintiff Clark Group, Inc. ("Clark") summary judgment on its breach of contract claim. Additionally before the court are the parties' briefings (Docs. 125, 128) concerning whether the court's grant of summary judgment in favor of Clark on its breach of contract claim invalidates ALG's third-party complaint against third-party defendant Clark Distribution Systems, Inc. ("CDS") for tortious interference. For the reasons set forth below, the court will deny ALG's motion (Doc. 129) for

reconsideration.  The court will also enter judgment in favor of CDS on ALG's third-party complaint in its entirety.

## I.  <u>Factual Background</u>[1]

This is a consolidated civil action filed by plaintiffs Clark Distribution Systems, Inc. ("CDS") and Clark Group, Inc. ("Clark") against  American Logistics Group, Inc., operating as ALG Direct, Inc. ("ALG").  CDS, a freight forwarder, alleges that ALG, a logistics provider and distributor of printed materials, breached the parties' Transportation Services Agreement.  Relatedly, Clark alleges that ALG breached the terms of a sublease executed between the parties.

On June 28, 2010, CDS and ALG entered into a Transportation Services Agreement ("TSA"), wherein CDS agreed to provide freight forwarding services for ALG.  (Doc. 67 ¶ 4; Doc. 71 ¶ 4).  During this same time period, ALG agreed to sublease one-half of Clark's warehouse in Harrisburg, Pennsylvania ("the Harrisburg Site.").  (Doc. 67 ¶ 7; Doc. 71 ¶ 7).  ALG sought a Pennsylvania facility in which Clark would handle freight forwarding work pursuant to the TSA, while ALG handled separate co-mail and co-palletization operations *after* installing its own equipment.  (Doc. 67 ¶ 10; Doc. 71 ¶ 10; Doc. 68-2 at 3).

The working relationship between the parties quickly broke down.  ALG stopped paying invoices to CDS under the TSA in November 2010.  (Doc. 67 ¶ 41;

---

[1]  The parties are familiar with the lengthy factual and procedural background of this case, which the court has recited in previous opinions.  (<u>See</u> Docs. 32, 56, 109, 119).  The court will discuss only those facts which are relevant to disposition of the instant motion.

Doc. 71 ¶ 1).  ALG also made its last rent payment under the sublease in November

2010, which reflected a pre-payment of rent for the month of December.  (See Doc.

67 ¶ 42, Doc. 71 ¶ 42, Doc. 67-1; compare Doc. 68-9 at 13-14 with Doc. 68-9 at 15-17).

The parties do not dispute that ALG never provided notice to Clark before it

discontinued its rental payments.[2]

CDS filed the instant action against ALG and its then-president, Patrick Del

Monico[3] on December 17, 2010, asserting breach of contract and anticipatory

repudiation against ALG.  (Doc. 1 at 5-6).  On July 29, 2011, the court granted

ALG's motion to dismiss for lack of subject matter jurisdiction with leave to amend.

(Doc. 32).  CDS filed a proper amended complaint that same day, which alleges only

breach of contract against ALG under the terms of the parties' transportation

services agreement ("the TSA case").  (Doc. 33 ¶¶ 30-32).

On January 26, 2012, the court granted a joint motion to consolidate the TSA

case with Clark Group, Inc. v. ALG Direct, Inc. (Civ. A. No. 1:11-CV-1299) ("the

Sublease case").  In the Sublease case, Clark alleges that ALG breached the terms

of the sublease executed between the parties.  (Civ. A. No. 1:11-CV-1299, Doc. 1).

─────────────────

[2] For the first time in the instant motion, ALG alleges that it did provide
notice to Clark before discontinuing its rental payments.  (See Doc. 128 at 4, 7-9;
Doc. 132 at 4-5).  However, as discussed *infra*, the exhibits ALG submits in support
of this contention are dated months *after* ALG ceased paying rent on the sublease.
Hence, the court rejects ALG's notice argument.

[3] Clark initially alleged negligent misrepresentation against Del Monico.  On
April 20, 2011 Clark filed a notice of voluntary dismissal pursuant to Federal Rule of
Civil Procedure 41(a)(1)(A)(i) dismissing Del Monico as a defendant.  (Doc. 21).

After answering the complaint, ALG filed a third-party complaint against CDS. (Civ. A. No. 1:11-1299, Doc. 9). In the third-party complaint, ALG claims that CDS tortiously interfered with the sublease by purportedly abandoning the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease. (Id.) On November 14, 2011, CDS filed its answer to ALG's third-party complaint. (Civ. A. No. 1:11-1299, Doc. 12).

After consolidation, ALG answered CDS's amended complaint from the TSA case. (Doc. 57). In its answer, ALG asserted several counterclaims against CDS for damages allegedly caused by CDS's mishandling of freight. (Id.)

CDS and Clark filed an omnibus motion (Doc. 65) for summary judgment on April 15, 2013. Clark asserted that summary judgment in its favor is warranted in the Sublease case because ALG breached the sublease by withholding payment. (Doc. 66 at 7-9). ALG did not contest that it withheld payment, but instead asserted that it is not liable for damages because Clark breached ALG's covenant of quiet enjoyment by actually and constructively evicting ALG from the Harrisburg Site. (Doc. 72 at 1).

The motion was referred to Magistrate Judge Susan E. Schwab, who filed a report and recommendation ("R&R") on December 3, 2013. (Doc. 99). The Magistrate Judge recommended that the court grant Clark's motion for summary judgment as it relates to the Sublease case, reasoning that record evidence does not support ALG's defenses of constructive or actual eviction. The court did not adopt this section of the R&R and instead denied Clark's motion for summary judgment

4

in the Sublease case.  (Doc. 109).  The court found that the parties do not dispute that ALG withheld rental payments contrary to the sublease's terms.  (Doc. 109 at 11).  However, the court found that genuine issues of material fact existed concerning whether Clark breached ALG's implied covenant of quiet enjoyment through actual or constructive eviction before ALG ceased making payments.  (Id. at 11-21).

Clark filed a motion for reconsideration on April 11, 2014.  (Doc. 114).  Clark asserted that ALG's failure to provide written notice of Clark's default under the sublease before withholding rental payments was fatal to ALG's affirmative defenses of breach of the covenant of quiet enjoyment through actual or constructive eviction.  Ultimately, the court determined that the lease included an express covenant of quiet enjoyment, *limited by* the other terms of the lease, including a notice provision.  (See Doc. 119 at 7-8).  The court concluded that ALG did not provide Clark with appropriate notice as required by the provisions of the lease and sublease before withholding rent.  (Id. at 9).  Thus, the court found that ALG breached the provisions of the sublease and granted summary judgment to Clark as a matter of law on its breach of contract claim.  (Id.)

The court noted that its holding may cast doubt on the viability of ALG's third-party complaint against CDS for liability on the sublease. (See Civ. A. No. 1:11-1299, Doc. 9).  In this complaint, ALG claims that CDS tortiously interfered with the sublease through its alleged abandonment of the TSA, and that CDS and Clark conspired to cause ALG to default on the sublease.  (Id.)  ALG had previously

acknowledged that its third-party complaint "is based almost entirely on Clark's constructive eviction and breach of ALG's right to quiet enjoyment." (Doc. 100 at 14-15). However, the court noted that its decision that Clark is entitled to summary judgment on its breach of contract claim against ALG is not based on the underlying validity of ALG's defenses of constructive or actual eviction. Instead, the court's decision was based on the fact that ALG did not have the right to withhold rent payments under the express terms of the sublease in the absence of providing notice, regardless of whether its right to quiet enjoyment was breached. Thus, the court directed the parties to confer on this issue, and, if divergent, to submit letter correspondence to the court outlining their respective positions.

On July 3, 2014, Clark's counsel submitted a letter to the court indicating that the parties were unable to agree on the disposition of the tortious interference claims, and ALG sent a letter in response. (Docs. 125, 128). ALG also filed the instant motion (Doc. 129) for reconsideration on July 17, 2014, claiming that Clark's actual or constructive eviction of ALG went to "the essence of the contract" and thus excused any subsequent failure on behalf of ALG to provide notice before withholding rental payments. (Doc. 129 at 2 (citing <u>LJL Transportation, Inc. v. Pilot Air Freight Corp.</u>, 962 A.2d 639, 651 (Pa. 2009)). The motion is fully briefed and ripe for disposition.

6

II.   **Legal Standard**

The partial grant of a motion for summary judgment is an interlocutory

order.  See Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744 (1976).  The court may

reconsider an interlocutory order whenever it is "consonant with justice to do so."

Mohammad v. Kelchner, Civ. A. No. 03-1134, 2005 WL 1138468, at *2 (M.D. Pa.

Apr. 27, 2005) (quoting United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973)).  An

order that does not dispose of every claim in an action "may be revised at any time

before the entry of a judgment adjudicating all the claims and all the parties' rights

and liabilities."  FED. R. CIV. P. 54(b); see also Gallant v. Telebrands Corp., 35 F.

Supp. 2d 378, 393 (D.N.J. 1998) ("[A] partial summary judgment order is subject to

revision or vacation at any time prior to final judgment.").

Rule 59 does not formally apply to motions for reconsideration of an

interlocutory order, but courts tend to grant motions for reconsideration

"sparingly" and "only upon the grounds traditionally available" under Rule 59(e).

A&H Sportwear Co., Inc. v. Victoria's Secret Stores, Inc., Civ. A. No. 94-7408, 2001

WL 881718, at *1 (E.D. Pa. May 1, 2001). Under Rule 59(e), a party seeking

reconsideration must typically establish (1) a change in the law; (2) newly

discovered evidence; or (3) the need to correct errors of law or fact or to prevent

manifest injustice.  Mack's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir.

1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d

Cir. 1995)).  Motions for reconsideration may also be appropriate in instances

"where, for example, the Court has patently misunderstood a party, or has made a

decision outside the adversarial issues presented to the Court by the parties, or has

made an error not of reasoning but of apprehension."  Rohrbach v. AT&T Nassau

Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995) (quoting Above the Belt, Inc. v.

Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)) *vacated in part on*

*other grounds on reconsideration by* 915 F. Supp. 712 (M.D. Pa. 1996).

III.   **Discussion**

    A.   **ALG's Motion for Reconsideration**

       For the first time in this litigation, ALG cites LJL Transportation, Inc. v. Pilot

Air Freight Corp., 962 A.2d 639, 651 (Pa. 2009) for the premise that "a contractual

provision requiring an opportunity to cure prior to termination does not bar

immediate termination based on a breach that goes to the essence of the contract."

(Doc. 128 at 4 (internal citations omitted)).  ALG asserts that Clark's alleged actual

or constructive eviction went to "the essence of the contract" and thus excused any

subsequent failure on behalf of ALG to provide notice before withholding rental

payments.

       ALG filed this motion 49 days after the court's entry of the order concerned.

Rule 54(b) allows *the court* to revise an interlocutory order at any time prior to entry

of final judgment, but Local Rule 7.10 requires *the parties* to file any motion for

reconsideration within fourteen (14) days after entry of the order.  Thus, ALG's

motion is untimely.

       Moreover, ALG has not identified any basis—such as a change in the law,

newly discovered evidence, or the need to correct errors of law or fact—rendering a

motion for reconsideration appropriate in this case.  Instead, ALG presents a new argument based on a 2009 case that was readily available to it throughout this protracted litigation.

Even if ALG's motion was timely and provided an adequate ground for reconsideration, ALG's argument lacks substantive merit.  In LJL, a franchisor terminated a franchise agreement when it discovered that the franchisee was engaging in fraud directly harmful to the franchisor's interests.  962 A.2d at 641-43. The franchisee sued the franchisor for breach, claiming that the terms of the franchise agreement required the franchisor to provide notice and a time to cure before termination.  Id. at 643.  The court found that the franchise agreement's notice provision was not exclusive because another provision in the agreement reserved the franchisor's right to "terminate the contract without notice in the event of a vital and essential breach."  Id. at 652; see also Trinity Indus., Inc. v. Greenlease Holding Co., Civ. A. No. 08-1498, 2010 WL 419420 (W.D. Pa. Jan. 29, 2010) ("Like the agreement in LJL Transport, the Agreement in issue here contains an express reservation by Trinity of its right to exercise all remedies available to it, i.e., which it 'may otherwise have at law or equity.'").  The court concluded that "when there is a breach of contract going directly to the essence of the contract . . . the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary."  Id.

Unlike in LJL, the notice provision in this case is explicit, absolute, and exclusive.  (See Doc. 67-1 ¶ 8).  There is no separate provision reserving either

party's right to terminate the contract without notice.  Thus, <u>LJL</u> is factually

distinguishable and the holding therein is inapposite.  Accordingly, the court will

deny reconsideration.[4]

### B.  Viability of ALG's Third-Party Complaint

The court must also address the continued viability of ALG's third-party

complaint against CDS for liability on the sublease due to tortious interference and

civil conspiracy.  (<u>See</u> Civ. A. No. 1:11-1299, Doc. 9).  CDS does not contend that

ALG's third-party complaint is invalid because of the court's grant of summary

judgment to Clark on its breach of contract claim against ALG.  Instead, CDS states

that ALG's tortious interference claims are legally untenable because Pennsylvania

law permits tortious interference claims only when a defendant has disrupted a

contract through acts directed at a third-party, not through acts directed at a

plaintiff.  ALG responds that no case in Pennsylvania specifies that the defendant's

"purposeful action" must be directed at the third party instead of the plaintiff.

(Doc. 128 at 2).

In Pennsylvania, the Restatement (Second) of Torts § 766 governs a claim for

tortious interference.  <u>See</u> <u>Windsor Securities, Inc. v. Hartford Life Ins. Co.</u>, 986

---

[4]Also for the first time in this litigation, ALG claims that it provided adequate
notice under the terms of the sublease prior to discontinuing rental payments.  (<u>See</u>
Doc. 128 at 4, 7-9; Doc. 132 at 4-5).  In support of this contention, ALG presents two
emails that were never introduced into the summary judgment record.  Moreover,
the emails are dated *months after* ALG ceased paying rent and thus would not
constitute proper notice under the sublease's notice provision as a matter of law.
Hence, the court rejects this belated ground for reconsideration.

F.2d 655, 659 (3d Cir. 1993) (citing <u>Adler, Barish, Daniels, Levin & Creskoff v.</u>

<u>Epstein</u>, 393 A.2d 1175 (1978); <u>Nathanson v. Medical College of Pa.</u>, 926 F.2d 1368

(3d Cir. 1991)).  Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by *inducing or otherwise causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other *from the failure of the third person to perform the contract.*

Restatement (Second) of Torts § 766 (emphasis added).  Thus, a tortious

interference claim in Pennsylvania expressly requires that the defendant's conduct

be directed at a third-party and not at the plaintiff.  <u>Windsor</u>, 986 F.2d at 660;

<u>Cottman Transmission Sys., LLC v. Bence</u>, Civ. A. No. 03-5467, 2004 WL 739907, at

*3 (E.D. Pa. April 5, 2004) ("Given that the claim set forth in Count III is premised

upon tortious action directed at Defendant himself, the allegations are not

cognizable under Pennsylvania law."); <u>Waterfront Renaissance Assoc. v. City of</u>

<u>Phila.</u>, Civ. A. No. 07-1045, 2008 WL 862705, at *9 (E.D. Pa. March 31, 2008) ("The

interference must be directed toward a third party business relation").

Pennsylvania does not recognize a separate cause of action "for preventing or

hindering plaintiff's performance of its own contract."  <u>Windsor</u>, 986 F.2d at 660.

ALG's assertions to the contrary are meritless.

In the case *sub judice*, the parties do not dispute that all of CDS's (allegedly

tortious) actions were directed to ALG, rather than any third party.  Thus, under

11

the provisions of § 766, ALG is unable to prevail on a claim of tortious interference as a matter of law.

ALG contends that the court should adopt or apply Restatement (Second) of Torts § 766A to this case.  (Doc. 128 at 5-6).  Section 766A permits tortious interference claims against a defendant for disruptive acts directed at a plaintiff instead of a third-party.  However, § 766A has not been adopted in Pennsylvania and the Third Circuit has predicted that it will not be adopted.  See Gemini Physical Therapy and Rehabilitation v. State Farm Mutual Automobile Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994); Phillips v. Selig, 959 A.2d 420, 437 n.13 (Pa. Super. 2008). Until the Supreme Court of Pennsylvania issues a contrary decision, this court is bound by the Third Circuit's decision in Gemini predicting that Pennsylvania will not recognize the cause of action for tortious interference set forth in § 766A.

For all of these reasons, CDS is entitled to summary judgment as a matter of law on ALG's tortious interference claim. The court observes that ALG's third-party complaint includes a claim for civil conspiracy against CDS based on its alleged tortious interference with the sublease.  Absent a valid and independent civil cause of action for tortious interference, ALG cannot recover on the basis of civil conspiracy to commit tortious interference.  See Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987) ("[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.").  Hence, in the Sublease case, Clark is entitled to summary judgment as a matter of law on its

breach of contract claim and CDS is entitled to summary judgment as a matter of law on ALG's third-party complaint in its entirety.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the court will deny ALG's motion (Doc. 129) for reconsideration of the court's order (Doc. 120) granting summary judgment to Clark on its breach of contract claim in the Sublease case.  Moreover, the court will enter judgment in favor of CDS on ALG's third-party complaint in the Sublease case.  An appropriate order follows.



 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:       August 14, 2014